UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

|  |  |  |
|---|---|---|
| TRANSCHED SYSTEMS LIMITED, | ) ) ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | C.A. No. 12-939-M |
| FEDERAL INSURANCE COMPANY, | ) ) ) | |
| Defendant. | ) ) | |

## MEMORANDUM AND ORDER

JOHN J. MCCONNELL, JR., United States District Judge.

Before the Court is Defendant Federal Insurance Company's Motion to Dismiss Plaintiff TranSched Systems Limited's Complaint. (ECF No. 10.) In its Complaint, TranSched seeks a declaration that Federal is liable under Rhode Island's direct action statute, R.I. Gen. Laws § 27-7-2.2, and for statutory and/or common-law bad faith. Federal raises two arguments in its motion: 1) TranSched's claims for insurance coverage fail because the Policy excludes those claims and 2) its bad faith claims fail because it is neither the insured under the policy nor an assignee of the insured. TranSched opposes Federal's motion. (ECF No. 12.) Because the Court finds that TranSched has sufficiently pled a claim that the policy provides coverage, Federal's Motion is DENIED.

I.   **FACTS AND TRAVEL**[1]

TranSched obtained a jury verdict on a breach of contract action filed in Delaware against Versyss Transit Solutions, LLC, Versyss Commercial Systems, LLC, Holbrook Systems, Inc. ("Versyss"), and Henry W. Holbrook.[2] In that suit, TranSched alleged that Versyss, specifically Vice President Sheryl Miller and Chief Technology Officer Lorin Miller,[3] made material misrepresentations during the negotiation and execution of an Asset Purchase Agreement (APA) through which TranSched would acquire Versyss' transportation software assets. (ECF No. 1 at ¶¶ 6, 9-10.) Federal Insurance Company, with whom Versyss had an insurance policy, retained counsel for Versyss in the Delaware case. (*Id.* at ¶¶ 16-20.)

After trial, a jury found Versyss liable to TranSched for 1) breach of contract regarding misrepresentations and warranties in the APA, 2) breach of the implied covenant of good faith and fair dealing, and 3) intentional misrepresentation. (*Id.* at ¶¶ 12-13.) "On March 29, 2012, the trial court ruled that, in addition to the $500,000 damages award from the jury, TranSched was entitled to $19,874.25 in costs, $170,268.75 in prejudgment interest, and post-judgment interest at a rate of $154.11 per diem. On that same date, the trial court entered an order

---

[1] TranSched does not object to Federal's reliance in its motion on the Policy, but asks the Court to strike the additional material that Federal relies on, specifically the Delaware complaint and a confidential settlement document. "Ordinarily, a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment." *Alternative Energy, Inc. v. St. Paul Fire & Marine Ins. Co.*, 267 F.3d 30, 33 (1st Cir. 2001) (citing *Watterson v. Page*, 987 F.2d 1, 3 (1st Cir. 1993)). The First Circuit did recognize "a narrow exception 'for documents the authenticity of which are not disputed by the parties; for official public records; for documents central to plaintiffs' claim; or for documents sufficiently referred to in the complaint.'" *Id.* Based on this precedent, the Court believes that it is within its purview to consider the documents TranSched itself attached to its Complaint – specifically, the verdict form – and the Policy. At this stage of the litigation on a motion to dismiss, the Court need not consider any additional documentary evidence.

[2] Mr. Holbrook was dismissed from the case before the judgment entered. (ECF No. 1 at ¶ 8.)

[3] While TranSched's Complaint discusses both Sheryl and Lorin Miller's role in the underlying Delaware case, its motion before the Court only discusses Sheryl Miller's specific acts. Therefore, when the Court refers to Ms. Miller in this Memorandum and Order, it is speaking of Sheryl Miller.

resolving all post-trial motions and leaving intact the jury verdict awarded in favor of TranSched and against Versyss." (*Id.* at ¶ 14.)

Versyss failed to pay the judgment and is now defunct. Federal disclaimed any duty to indemnify based on the Policy's fraud and contract exclusions. (ECF No. 10 at 7.) TranSched filed this lawsuit, seeking a declaration that Federal must pay the $500,000 jury award under the Policy, and damages for statutory and/or common law bad faith. (ECF No. 1 at ¶ 14.) Federal seeks dismissal of the case based on the exclusions in the Policy. (ECF No. 10.)

## II. STANDARD OF REVIEW

In reviewing a motion to dismiss filed pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts as true the well-pleaded factual allegations of the complaint and draws all reasonable inferences in favor of the plaintiff. *Cook v. Gates*, 528 F.3d 42, 48 (1st Cir. 2008); *McCloskey v. Mueller*, 446 F.3d 262, 266 (1st Cir. 2006). To withstand "a motion to dismiss, a complaint must allege 'a plausible entitlement to relief.'" *ACA Fin. Guar. Corp. v. Advest, Inc.*, 512 F.3d 46, 58 (1st Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S.Ct. 1955, 1967-69 (2007)); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 678-87 (2009). In *Iqbal*, the Supreme Court further explained, "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." 556 U.S. at 664. "[A] plaintiff . . . is . . . required to set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *Gooley v. Mobil Oil Corp.*, 851 F.2d 513, 515 (1st Cir. 1988).

III. ANALYSIS

A. APPLICABLE LAW

Rhode Island law applies to this dispute because Federal issued the Policy in Rhode Island to Versyss, a Rhode Island corporation. Under Rhode Island law, "when the terms of an insurance policy are found to be clear and unambiguous, judicial construction is at an end. The contract terms must be applied as written and the parties are bound by them." *Amica Mut. Ins. Co. v. Streicker*, 583 A.2d 550, 551 (R.I. 1990). In determining whether contract language is clear and unambiguous, a court should interpret "the parties' intent based solely on the written words," and give unambiguous words their "plain and natural meaning." *In Re Newport Plaza Assocs.*, 985 F.2d 640, 645 (1st Cir. 1993). Contract language is ambiguous where it is "reasonably susceptible of different constructions." *Westinghouse Broad. Co., Inc. v. Dial Media, Inc.*, 410 A.2d 986, 991 (R.I. 1980). Where an ambiguity exists, "it will be strictly construed against the insurer." *Sentry Ins. Co. v. Grenga*, 556 A.2d 998, 999 (R.I. 1989); *see also Peloquin v. Haven Health Ctr. of Greenville, LLC*, 61 A.3d 419, 431-32 (R.I. 2013).

B. POLICY COVERAGE – COUNT I

There is no dispute that the Policy provides coverage[4] here, absent any exclusion. Federal provided claims-made coverage to all of the Versyss entities for claims made during the policy period. (ECF No. 1 at ¶¶ 16, 19.) The specific coverage purchased by Versyss included

---

[4] Coverage C, Corporate Liability Coverage, covers: "Loss on behalf of the Insured Organization resulting from any Insured Organization Claim first made against such Insured Organization during the Policy Period, or any applicable Extended Reporting Period, for Wrongful Acts." The Policy defines "Wrongful Acts" as "any error, misstatement, misleading statement, act, omission, neglect, or breach of duty committed, attempted, or allegedly committed or attempted by: ...(b) For purposes of coverage under Insuring Clause (C): any Insured Organization." (U)(1)(b). Therefore, these two sections, when read together, reveal the existence of coverage for claims against Versyss for errors and other negligent (as opposed to intentional or deliberate) acts.

4

so-called "Corporate Liability Coverage" under the "Directors and Officers Liability Coverage Section."

In support of its claim for coverage, as an initial matter, TranSched argues that Federal's conduct in defending Versyss in the Delaware litigation is irreconcilable with its position before the Court that the Policy does not cover those underlying claims. Federal counters that the fact that Federal defended Versyss in the Delaware litigation does not mean that it conceded coverage for any liability determination. The Court agrees with Federal.

"[U]nder Rhode Island law, the duty to defend is far more expansive than the duty to indemnify-an observation that necessarily implies that an insurer may have to defend a suit that it may not have a coverage obligation in the end." *Emhart Indus., Inc. v. Home Ins. Co.*, 515 F. Supp. 2d 228, 241-42 (D.R.I. 2007) (citing *Employers' Fire Ins. Co. v. Beals*, 240 A.2d 397, 403 (1968)). An insurance company's obligation ultimately to indemnify, however, depends on whether the facts that liability is based on fall within the coverage set forth in the policy subject to exclusions. Therefore, the Court declines to find Federal's defense in the Delaware case to be dispositive of coverage.

### C. THE POLICY EXCLUSIONS

At the heart of this case is the issue of whether certain exclusions in Versyss' Policy, to wit, the "contract exclusion" and/or the "fraud exclusion," exclude coverage for TranSched's verdict for intentional misrepresentation.[5] The dispute centers on whether the exceptions to those exclusions apply such that TranSched's claims survive Federal's motion to dismiss.

---

[5] There is no dispute that the policy excludes coverage of the Delaware jury verdict on TranSched's breach of contract and breach of the covenant of good faith and fair dealing claims. Only its claims on the intentional misrepresentation verdict and for bad faith are before the Court.

### 1. Contract Exclusion

The contract exclusion provides that:

(C)"[n]o coverage will be available under Insuring Clause (C) for any Insured Organization Claim: * * * *

(2) based upon, arising from, or in the consequence of any actual or alleged liability of an Insured Organization under any written or oral contract or agreement, provided that this Exclusion (C)(2) shall not apply to the extent that an Insured Organization would have been liable in the absence of the contract or agreement;

(ECF No. 10-3 at 8.) This contract exclusion is not ambiguous. The language makes clear that the Policy provides no coverage for any claim for conduct arising from any liability under a contract, unless liability would exist if there were no contract, i.e. whether Versyss was liable independent of the contract – the APA. Therefore, the Court must first consider whether TranSched's claim arises from liability under the APA. If the answer is "no," then the Policy covers TranSched's losses. If the answer is "yes," and the Court finds that Versyss's liability arose from liability under the contract, then there is no coverage unless TranSched's claims arise from liability *independent* of the APA. If, accepting as true the well-pleaded factual allegations of TranSched's complaint and drawing all reasonable inferences in its favor, the Court concludes that TranSched's intentional misrepresentation claim does not arise from liability under the APA or is independent of the APA, then TranSched's claim survives Federal's motion at this stage.

In its motion, Federal argues that "arising from" a contract or agreement has been interpreted broadly to mean "originating from, growing out of, flowing from, incident to or having connection with" a contract or agreement. *Penn-America Ins. Co. v. Lavigne*, 617 F.3d 82, 87 (1st Cir. 2010). Specifically, it argues that TranSched's intentional misrepresentation claim arose from the APA – that Versyss, through Ms. Miller, made intentional misrepresentations that induced it to enter into the APA and also that those misrepresentations

6

were ultimately contained in the APA. Because Ms. Miller's intentional misrepresentations arose from the APA, Federal concludes that the contract exclusion applies and TranSched's claim fails.

TranSched, on the other hand, relies on the exception to the contract exclusion, i.e., the exclusion does not apply if liability was independent of the contract, in arguing that the contract exclusion does not apply. Because the evidence in the Delaware case included conduct that occurred months before the parties executed the APA, that conduct was actionable independent of representations contained in the APA. (ECF No. 1 at ¶¶ 9-10.) TranSched asserts that the evidence supports the inference that the jury based its verdict against Versyss in part on its determination of Ms. Miller's fraudulent conduct during the due diligence phase, rendering it a separately actionable tort of intentional misrepresentation. These factual allegations in the Complaint, TranSched argues, necessitate the conclusion that Versyss would have been liable even if the transaction closed before the parties executed the APA and therefore the contract exclusion does not apply. (ECF No. 12-1 at 2-3.)

First, the Court must examine whether TranSched's claim in the Delaware action arises from Versyss' liability under the APA. While the allegations in the Complaint are somewhat limited, the Court is required to draw reasonable inferences in TranSched's favor. *Cook*, 528 F.3d at 48. In its Complaint, TranSched alleges that "during the negotiation and execution of an Asset Purchase Agreement ("APA") through which TranSched would acquire the transportation software assets of Versyss, Versyss made numerous material misrepresentations upon which TranSched relied to its detriment. * * * Many of the enumerated misrepresentations were made by Sheryl Miller, a Vice President at Versyss, and Lorin Miller, Chief Technology Officer of

7

Versyss." (ECF No. 1 at ¶¶ 9-10.) From this allegation, the Court can infer that some of this conduct occurred before the APA was created.

Turning to the second prong of the contract exclusion, whether Versyss would have been liable in the absence of the APA, the Court finds that it is reasonable to infer from the allegations in the Complaint, particularly the jury's ultimate verdict, that at least a portion of Versyss' liability for Ms. Miller's intentional misrepresentations occurred before the APA existed. Therefore, the Court finds that TranSched has pled sufficient facts in its Complaint to defeat Federal's motion to dismiss based on the applicability of the contract exclusion.

### 2. Fraud Exclusion

Federal also relies on the Policy's "fraud exclusion" in arguing that the Policy excludes coverage of the jury's intentional misrepresentation verdict. The Policy excludes coverage "(10) based upon, arising from, or in consequence of any deliberately fraudulent act or omission or any willful violation of any statute or regulation by such Insured, if a final and non-appealable judgment or adjudication adverse to such Insured establishes such a deliberately fraudulent act or omission or willful violation." (ECF No. 10-3 at 10.) Federal argues that because the verdict against Versyss was for deliberately fraudulent conduct, coverage is excluded. TranSched asserts, in contrast, that because the fraud alleged here, primarily by Ms. Miller, cannot be imputed to the Insured Organization, the exclusion does not apply.

The Court finds that, based on the facts alleged in the Complaint, the fraud exclusion does not apply. This fraud exclusion bars coverage for liability "based upon, arising from, or in consequence of any deliberately fraudulent act or omission" by "*such* Insured." (*Id.*) (Emphasis added.) Versyss is subject to the fraud exclusion only if "such Insureds" committed a deliberately fraudulent act. By using the term "such Insured," the fraud exclusion is focused upon deliberate

fraud committed by the particular Insured that is seeking coverage, in this case, Versyss. However, as a corporation, Versyss does not commit deliberate fraud on its own; it acts through its employees. The jury in Delaware considered the acts of both Versyss and TranSched employees in rendering its verdict in favor of TranSched's claims. The Policy provides guidance in determining which key Versyss employees' conduct can be imputed to Versyss when attempting to discern coverage. The "Severability of Exclusions" clause provides:

> With respect to Exclusions (A)(10) [fraud exclusion] and (A)(11) in this Coverage Section: *** (2) only facts pertaining to and knowledge possessed by any past, present or future Chief Financial Officer, President, Chief Executive Officer or Chairperson of any Insured Organization shall be imputed to any Insured Organization to determine if coverage is available.

(ECF No. 10-3 at 11.) Thus, only the deliberately fraudulent acts of Versyss' CFO, President, CEO or Chairperson is imputed to Versyss.

The Complaint specifically alleges that the intentional misrepresentations were committed by Sheryl Miller, a Vice President at Versyss, and Lorin Miller, Chief Technology Officer of Versyss. (ECF No. 1 at ¶ 10.) Because neither Sheryl Miller nor Lorin Miller held the position of CFO, President, CEO, or chairperson of any Versyss entity, the facts pertaining to, and the knowledge held by, these employees cannot be imputed to Versyss. Accordingly, the fraud exclusion is inapplicable based on the allegations in the Complaint, and therefore, the Court rejects Federal's reliance on the fraud exclusion and denies Federal's motion to dismiss based on that exclusion.

**D. BAD FAITH – COUNTS III & IV**

TranSched has alleged statutory and common-law bad faith against Federal based on Versyss's violations of R.I. Gen. Laws § 9-1-33 for:

> (i) refusing to pay or settle the Claim for a covered loss and damages resulting from the wrongful acts of Versyss; (ii) refusing to timely perform its obligations

under the Policy; (iii) failing to conduct a reasonable investigation of the Claim; (iv) failing to articulate a reasonable factual or legal basis for refusing to perform its obligations under the policy, (v) requiring TranSched to expend funds and litigation costs to prove coverage; (vi) failing to provide a reasonable offer to settle the Claim at times when its liability was reasonably clear, including but not limited to a refusal to make a reasonable offer of settlement even after the jury reached a verdict and again after all appeal periods had expired; and (vii) denying the Claim based upon inapplicable policy terms and exclusions.

(ECF No. 1 at ¶ 57.) Federal counters that TranSched's bad faith claims fail because neither the statutes nor common law[6] permit recovery by someone "standing in the place" of the insured. TranSched was a stranger to the contract between Federal and Versyss and therefore Federal claims it has no bad faith claim because only the insured can bring such claim against an insurance company. *See Cianci v. Nationwide Ins. Co.*, 659 A.2d 662 (R.I. 1995).

TranSched counters that Federal's motion on its bad faith claims is premature because its Complaint alleges sufficient facts to establish bad faith. Moreover, it argues that Rhode Island law has recognized that a third party claimant, standing in the shoes of the insured, can assert a bad faith claim. *Demarco v. Travelers Ins. Co.*, 26 A.3d 616, 626-27 (R.I. 2011) (allowing this where the complaint alleged an assignment of the bad faith claim). Although TranSched has not alleged that Versyss assigned its bad faith claim, it argues that courts have implied an equitable assignment and allowed third parties to assert such claims on behalf of an insured as a way to make that third party whole. Because Rhode Island courts have not ruled on the issue of equitable assignments, however, TranSched counsels restraint on this claim and asks the Court to

---

[6] Federal points out that its argument here presumes that a common law cause of action for bad faith still exists in spite of the First Circuit's decision in *Borden v. Paul Revere Life Ins. Co.*, 935 F.2d 370, 378 (1st Cir. 1991), which appears to hold that the statutory cause of action supplanted the common law one.

essentially stay[7] its bad faith claims and not render a decision unless and until TranSched prevails on its declaratory judgment claims for coverage.

The Court believes that TranSched's suggestion is the best course at this stage. As TranSched acknowledges, its bad faith claims will disappear if it does not succeed on the merits of its declaratory judgment case. While the Court cannot be certain at this stage of how the Rhode Island Supreme Court would regard TranSched's equitable assignment position, in light of its representation that it may ask this Court to certify this issue to the Rhode Island Supreme Court, the Court will decline to rule on Federal's motion as to the bad faith claims contained in Counts III and IV. Therefore, the Court denies the motion as to those counts without prejudice and stays any action on the bad faith claims at this time.

### E. R.I. GENERAL LAWS § 27-7-2 - COUNT II

Federal moves to dismiss the claim in Count II based on R.I. Gen Laws § 27-7-2, which allows an injured party to pursue the insurance company once it obtains a judgment against the insured. Federal argues that TranSched is not entitled to recover beyond what is covered in the Policy. TranSched argues that section 27-7-2.2 provides that insurers that fail to accept pre-trial settlement demands are liable for interest on the judgment. TranSched alleges in its Complaint that it made pre-trial demands within the policy limits that Federal rejected. (ECF No. 10-1 at ¶¶ 32-39.) Because the Court has found at this very early stage that TranSched's allegations are sufficient to find that coverage exists despite the fraud or contract exclusions, Federal's motion is DENIED as to this Count.

---

[7] It is considered normal course to bifurcate a bad faith claim and stay discovery on that claim until there is first a finding of coverage. *See, e.g., Imperial Cas. and Indemnity Co. v. Bellini*, 746 A.2d 130, 134 (R.I. 2000); *Corrente v. Fitchburg Mut. Fire Ins. Co.*, 557 A.2d 859, 861-62 (R.I. 1989); *Bartlett v. John Hancock Mut. Life Ins. Co.*, 538 A.2d 997, 999-1002 (R.I. 1988).

## IV. CONCLUSION

Because TranSched has pled sufficient allegations to support the availability of insurance coverage for the intentional misrepresentation verdict under the Federal Policy in spite of the contract exclusion and the fraud exclusion, Federal's motion to dismiss Counts I and II are DENIED. The Court DENIES Federal's motion to dismiss TranSched's bad faith claims contained in Counts III and IV but STAYS those claims until the Court makes a determination on TranSched's direct action claim.

IT IS SO ORDERED,

John J. McConnell, Jr.
United States District Judge

August 2, 2013